UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 12-118 |
| BATES | SECTION: "H" (3) |

**ORDER AND REASONS**

Before the Court are Defendant's **Motion to Suppress Evidence (Rec. Doc. 34)** and Plaintiff's opposition thereto **(Rec. Doc. 42)**. Defendant's motion was set for hearing on February 26, 2013, on the briefs, unless the Court determined that an evidentiary hearing was warranted. Upon review of the parties' briefs, the Court issued an order on February 26, 2013, requiring counsel to provide it with the evidence referenced in their respective memoranda, namely, the arrest report, the video of the stop, and the photographs of Defendant's vehicle. On February 28, 2013, counsel complied with the Court's order, providing the Court with the requested materials. Accordingly, having considered the motion and legal memoranda, the record, the evidence submitted by counsel, and the applicable law, the Court finds that an evidentiary hearing on this matter is **NOT WARRANTED**. Furthermore, upon review of the aforementioned materials, the Court finds that Defendant's motion should be **DENIED** for the reasons set forth more fully below.

1

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This case arises from the February 15, 2012 arrest and subsequent indictment of Defendant Kenneth Wayne Bates for possession with intent to distribute 500 grams or more of cocaine hydrochloride. The facts before this Court are as follows.[1]

On February 15, 2012, Louisiana State Police Trooper Tracey Plaisance ("Trooper Plaisance") was monitoring traffic on U.S. Highway 90 in Terrebone Parish, Louisiana, when he noticed a 2003 Ford Taurus. Trooper Plaisance reports that as the vehicle approached him, it slowed to 54 m.p.h., despite the fact that the speed limit on that highway was 70 m.p.h. Arrest Report, p. 1. As the car passed, he noticed that "the tint appeared to be too dark and there was some type of cover obscuring the license plate." Arrest Report, p. 1. Therefore, Trooper Plaisance pulled the vehicle over.

Upon stopping the vehicle, Trooper Plaisance approached the passenger front-side window and began speaking with the vehicle's driver, Kenneth Wayne Bates ("Mr. Bates"). Trooper Plaisance asked Mr. Bates for his license, where he was going, and the location from which he was coming. Mr. Bates told Trooper Plaisance that he was going to New Orleans and that he was coming from Lafayette. However, after his initial statement, Mr. Bates recanted and told Trooper Plaisance that he was coming from Lake Charles, explaining that he had been up all night at the casino gambling. After this conversation, Trooper Plaisance explained to Mr. Bates that he had stopped him for having a plastic cover over his license plate. Video 2:25.

---

[1] The following facts are garnered from the Arrest Report and Video of the search.

Specifically, he told Mr. Bates that "it is illegal to have anything on top your license plate in Louisiana, okay, whether its clear or whether its . . . and that one right there is kinda, it looks older and faded out and stuff like that and like as you passed all I could see was a big [glass/black sheet], back there okay."[2] Trooper Plaisance continued to question Mr. Bates for approximately two more minutes before returning to his car.

After returning to his car, Trooper Plaisance ran Mr. Bates' information, looking at his criminal history and checking for any outstanding warrants. Arrest Report, p. 1. As Trooper Plaisance ran the information, he discussed the conversation between himself and Mr. Bates with his partner. Video 6:22 - 10:59.  In the discussion, Trooper Plaisance explained that Mr. Bates was "real nervous when he handed [him] his license," and that Mr. Bates had given him inconsistent answers to his questions.[3] Additionally, he noted that even though Mr. Bates had not slept in Lake Charles, there was as shaving kit in the back seat. Video 6:22 - 10:59. Trooper Plaisance also explained to his partner that he smelled some kind of masking agent in the car. Video 6:22 - 10:59. Upon completing the criminal history report and learning that Mr. Bates had approximately fifteen priors for distribution, Trooper Plaisance returned to Mr. Bates' vehicle with a "Consent to Search" form. Video 12:27.

When Trooper Plaisance returned, he explained the "Consent to Search" form to Mr.

---

[2] Video 2:30. The Court notes that the bracketed part of this statement while audible, is difficult to decipher. As the Court interprets this statement, Trooper Plaisance stated that all he could see was a big "glass sheet" and/or a big "black sheet." In either case, the implication is the same—Trooper Plaisance could not read the license plate as Mr. Bates passed him on the highway.

[3] Video 6:22 - 10:59. In the arrest report, Trooper Plaisance states that as Mr. Bates handed him his license "his hand trembl[ed]." Arrest Report, p. 1.

Bates and obtained permission to search the vehicle. Arrest Report, pp. 1-2; Video 13:39 - 14:15. During the course of his search, Trooper Plaisance discovered a Walgreens receipt from Orange, Texas dated February 13, 2012, two days before the stop. Arrest Report, p. 2; Video 30:04 - 31:56. The receipt was for the purchase of a USB drive, which the trooper also found in the car. Trooper Plaisance questioned Mr. Bates about the receipt, and Mr. Bates denied having been to Texas and having made the purchase. Arrest Report, p. 2; Video 30:04 - 31:56. Trooper Plaisance then continued to search the car and reports that "while working next to the passenger side airbag [he] could smell a strong odor of air freshener emanating from the dash."[4] Arrest Report, p. 1; Video 50:57 - 51:37 ("there's a, there's a odor like uh, like uh pine trees or something coming from inside here . . . that was one of the, one of the spots . . . the air bag"). The trooper pried up the corner of the air bag cover and located multiple grey duct taped packages inside. Arrest Report, p. 1.

Trooper Plaisance then arrested Mr. Bates. Video 52:03. Subsequently, Trooper Plaisance contacted a narcotics detection K-9 unit. Three packages of cocaine hydrochloride, approximately 6.4 lbs (2.9 kilograms), were recovered from the scene.

In addition to arresting Mr. Bates, Trooper Plaisance also cited him for illegal tint pursuant to Louisiana Revised Statute 32:361.1 and improper display pursuant to Louisiana Revised Statute 47:507. Arrest Report, p. 1. The citation confirms that Mr. Bates' window tint was at thirty-three percent. Arrest Report, p. 1.

---

[4] The video of the stop also indicates that Trooper Plaisance was aware that a common hiding place in this type of vehicle was the passenger side air bag. Video 40:44.

On February 14, 2013, Mr. Bates filed the instant Motion to Suppress.

## THE PARTIES' ARGUMENTS

In his motion, Mr. Bates argues that all evidence obtained from the search of his vehicle must be suppressed because Trooper Plaisance did not have reasonable suspicion to effect the stop. Mr. Bates contends that under the Fourth Amendment, in order for evidence obtained from a traffic stop to be admissible, the officer's action must be justified at its inception. In making this argument, Mr. Bates focuses on Trooper Plaisance's explanation to him that he was being stopped because "'it's illegal to have anything on top [of] your license plate in Louisiana, OK?'" Def. Mem. in Supp., Rec. Doc. 34-1, p. 7. Mr. Bates argues that under Louisiana law, it is not illegal to have a clear license plate cover, rather it is illegal to obscure any portion of a license plate.[5] Mr. Bates contends that video footage of the stop reveals that Trooper Plaisance actually read the license plate digits to the radio dispatcher before Mr. Bates' vehicle came to stop. Therefore, Mr. Bates asserts that the traffic stop was not objectively reasonable because his license plate was clearly visible to the trooper.

In its opposition, the United States argues that the evidence obtained from the stop and subsequent search of Defendant's vehicle is admissible. The United States contends that the stop was objectively reasonable because Trooper Plaisance stopped Mr. Bates for (1) a tint violation, and (2) for obscuring his license plate with a plastic license plate cover. The United

---

[5] Specifically, Mr. Bates argues that the proper reading of the Louisiana statute prohibiting license plate covers is contained in the Louisiana Administrative Code, which requires that a license plate "be clean, clearly visible and readable for a distance of 50 feet to the rear of the vehicle" and that "[p]lates shall not be obscured or damaged so that the numbers cannot be identified." La. Admin. Code tit. 55 § 811(B)(6)(b) (2012); see Def. Mem. in Supp., Rec. Doc. 34-1, p. 7.

5

States asserts that under Louisiana law, these are valid objective reasons to initiate a stop. Moreover, the United States argues that looking at the totality of the circumstances, these reasons, combined with Mr. Bates' decrease in speed as he approached the trooper, provided Trooper Plaisance with "a particularized and objective basis to stop the vehicle." Pl.'s Opp., Rec. Doc. 42, p. 6.

In discussing the license plate violation, the United States also includes a press release issued by the Louisiana State Police and a letter sent by the state police to the motor vehicle inspection stations with its memoranda. The press release states that the state police are launching an "aggressive enforcement effort to address obscured license tags." Pl.'s Opp. Ex. A, Rec. Doc. 42-1, p. 1. It specifically notes that clear license plate covers are included in this campaign. The press release explains that "[w]hile tinted, blurred, or mirrored plate covers are an obvious obscurement, clear plate covers can also scratch, become yellowed, or get cloudy over time reducing visibility." Pl.'s Opp. Ex. A, Rec. Doc. 42-1, p. 1. The United States contends that the release supports Trooper Plaisance's explanation that he could not read the plate as Mr. Bates passed. Moreover, the United States points out that Trooper Plaisance specifically noted that the license plate cover was older and faded out. It also contends that the pictures of the plate support this statement. Furthermore, the United States asserts that even if Mr. Bates' license plate was legible, it is of no consequence because the illegal tint violation provides an independent legitimate reason for effecting the stop.

## DISCUSSION

The Fourth Amendment guarantees that all people have the right to be "secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Although unreasonable searches and seizures are prohibited, limited searches and seizures are permitted "where there is reasonable and articulable suspicion that a person has committed or is about to commit a crime. . . ." United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000). The United States Court of Appeals for the Fifth Circuit has stated that, "reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (citing United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002)). "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004). When evaluating the legality of a vehicular stop (Terry stop), the court engages in a two-step inquiry. Jones, 234 F.3d at 240. First, the court determines "whether the officer's action was justified at its inception." Id. Second, if the court determines that the officer's action was justified, it evaluates "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Brigham, 382 F.3d at 506. In assessing the overall validity of the stop, the court looks at "the totality of the circumstances—the whole picture." United States v. Chavez, 281 F.3d 479, 485 (5th Cir. 2002) (quoting United States v. Sokolow, 490 U.S. 1, 7-8 (1989)).

With regard to the first prong of the Terry test, the decision to stop an automobile is justified at its inception where the police "have an objectively reasonable suspicion that some

sort of illegal activity, such as a traffic violation, occurred, or is about to occur . . . ." Lopez-Moreno, 420 F.3d at 430 (citing United States v. Breeland, 53 F.3d 100, 102 (5th Cir. 1995)). Under this rule, law enforcement officers are given "broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justification for their actions." United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999) (citing United States v. Miller, 146 F.3d 274, 279 (5th Cir.1998)). However, where the infraction forming the basis of a stop is not an actual violation of state law, "there [is] no objective basis for [reasonable suspicion] justifying the stop." Lopez-Valdez, 178 F.3d at 288 (citing Miller, 146 F.3d at 279). Thus, the central question in the instant case is whether there was an objective basis for the stop in question. This Court finds that there was.

In his report, Trooper Plaisance states that he stopped Mr. Bates because (1) his tint was too dark, and (2) his license plate was obscured. Louisiana Revised Statute 32:361.1 states that "no person may operate a motor vehicle with any object or material placed on or affixed to the front windshield or to the front side windows of the vehicle." La. Rev. Stat. § 32:361.1(B). It goes on to explain that for the front side window, the light transmission must be at least forty percent. Id. § 32:361.1(C)(1). Trooper Plaisance's report notes that Mr. Bates' tint was thirty-three percent, seven percent below the legal tinting limit. Arrest Report, pp. 1-2. Because it was below the limit, Trooper Plaisance also cited Mr. Bates for the illegal tint. Arrest Report, p. 1. Thus, the Court concludes that at the inception of the stop, Trooper Plaisance had reasonable

suspicion that a traffic violation had occurred.[6] Therefore, the stop was justified.

Although the foregoing analysis is sufficient for the Court to deny Defendant's motion, the Court finds that the suspected license plate violation also justified the stop. In making this finding, the Court looks closely at Trooper Plaisance's own explanation of why he stopped Mr. Bates. During the stop, Trooper Plaisance explained to Mr. Bates that he stopped him because "as [Mr. Bates] passed all [Trooper Plaisance] could see was a big [glass/black sheet]." Video 2:30. Likewise, he explained to Mr. Bates that his cover, although clear, was "older and faded out." Video 2:30. Under Louisiana law, a license plate must be "in a place and position to be clearly visible, and *shall be maintained free from foreign materials and in a condition to be clearly legible*." La. Rev. Stat. § 47:507(B) (emphasis added). Likewise, the administrative code applying the statute states that "[p]lates shall not be *obscured* or damaged so that the numbers cannot be identified." La. Admin. Code tit. 55 § 811(B)(6)(b) (emphasis added). Trooper Plaisance's explanation to Mr. Bates clearly indicates that he could not see the numbers on Mr. Bates' license plate as Mr. Bates passed him on the highway. Therefore, because the license plate was not clearly legible when Mr. Bates passed Trooper Plaisance, Trooper Plaisance stopped the vehicle.[7]

---

[6] In Mr. Bates' memorandum, he argues that there is no proof, aside from the citation, that the tint was actually below the legal limit for light transparency. The Court notes that even if Mr. Bates' window tint had been within the legal limit, it would not change the outcome of the Court's decision. Trooper Plaisance's suspicion that the tint was too dark justifies his stop of the vehicle in order to investigate the suspected violation. See State v. Pena, No. 43.321 (La. App. 2 Cir. 3/30/08); 988 So. 2d 841, 847 ("Even if the trooper had later determined that the degree of tint on the windows was acceptable, he was justified in stopping the vehicle to further investigate a possible infraction.").

[7] The Court also notes that the press release issued by the Louisiana State Police on July 28, 2012 further supports Trooper Plaisance's statements. The press release plainly notes that the police have been having problems

While the Court is mindful that Trooper Plaisance was eventually able to read the license plate as he approached the car from behind, that does not change the fact that the plastic cover initially obscured Trooper Plaisance's view of the plate. Likewise, Trooper Plaisance's inaccurate statement to Mr. Bates that "it is illegal to have anything on your license plate in Louisiana" does not change the Court's finding that the stop was based on Trooper Plaisance's reasonable suspicion that a traffic violation had occurred. Video 2:25. While that portion of Trooper Plaisance's explanation of the law may have been inaccurate, looking at the entirety of his statements, it is evident that substantively, the stop was objectively within the confines of the law. Trooper Plaisance could not read Mr. Bates' license plate as he passed him and, therefore, was warranted in stopping Mr. Bates' vehicle to investigate. Accordingly, the Court finds that the stop was objectively reasonable.

Having determined that the initial stop was reasonable, the Court now moves on to the second prong of the Terry test and evaluates "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Brigham, 382 F.3d at 506. The Fifth Circuit has explained that during the course of effectuating a stop, an officer may examine the driver's license and registration, check to see if the driver has outstanding warrants, and check to see if the vehicle is stolen. Lopez-Moreno, 420 F.3d at 431 (citing Brigham, 382 F.3d at 507). Likewise, an officer may ask the driver about the purpose and

---

reading license plates that are covered by clear plate covers, particularly when they "become yellowed, or get cloudy over time." Pl.'s Opp. Ex. A, Rec. Doc. 42-1, p. 1. The release includes these clear covers in the "aggressive enforcement effort" that the police plan to undergo in order to curb the problem of obscured license plates. Pl.'s Opp. Ex. A, Rec. Doc. 42-1, p. 1.

itinerary of his trip. Lopez-Moreno, 420 F.3d at 431 (citations omitted). "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." Id.

The Court finds that Trooper Plaisance's subsequent actions were reasonably related to the circumstances that justified stop, and that Trooper Plaisance had reasonable suspicion to prolong Mr. Bates' detention and conduct the search. Specifically, Trooper Plaisance explained that Mr. Bates was "real nervous when he handed [him] his license." Video 6:22 - 10:59; Arrest Report, p. 1. Likewise, he explained that Mr. Bates had given him inconsistent answers to his questions, first stating that he was coming from Lafayette, and then later stating that he was coming from Lake Charles. Arrest Report, p. 1; Video 6:22 - 10:59. Additionally, Trooper Plaisance noticed that there was a shaving kit in the backseat, despite that fact that Mr. Bates had told him that he did not sleep in Lake Charles but rather, was up all night gambling. Video 6:22 - 10:59. Furthermore, Trooper Plaisance smelled a masking agent in the car and was aware that Mr. Bates had approximately fifteen priors for distribution. Video 6:22 - 10:59, 12:27. Looking at these facts as a whole, the Court finds that Trooper Plaisance's subsequent actions were reasonably related in scope to the circumstances that justified the stop and, moreover, that Trooper Plaisance had reasonable articulable suspicion to effect the search of the vehicle.

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion is **DENIED**.

New Orleans, Louisiana this 4th day of March, 2013.

_____
JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE